elected to take in right of his wife, and the court adjudged, that the legal estate in fee vested in him, without paying the purchase money, secured by the bonds, to the heirs, on obtaining a deed from the commissioners. But it was not argued before the court, nor was it expressly decided by them, that the giving of bonds was an indispensable requisite to vest the legal estate in fee in the person electing. This question we now, however, propose to put at rest, by declaring it to be our unanimous opinion, that a legal estate in fee in the land elected to be taken, cannot vest in the party electing to take and pay the value, without his actually paying the other persons entitled their just proportions of the value in money, or giving bonds to them for the same, agreeably to the a� of 1802, *ch.* 94.

We reverse the judgment of *Harford* county court, and direct a *procedendo* to issue.

**JUDGMENT REVERSED, &c.**

---

### SMITH *vs.* DORSEY.

MOTION for a rule to show cause why an execution should not issue on a judgment affirmed in this court at June term 1819, on an appeal from *Charles* county court, from a judgment rendered therein, in an action of debt brought by *Smith* against *Dorsey.* After the affirmance of the judgment in this court, *Dorsey* obtained an injunction to stay proceedings thereon. The injunction was continued by the chancellor until final hearing in May 1824, when he decreed, "that unless the complainant shall, on or before the 13th of May next, pay to the defendant the sum of $5867 25, with interest, &c. "the injunction heretofore issued shall be dissolved," &c. From that decree *Dorsey* appealed to this court, and entered into the following appeal bond, which was approved by the chancellor. "Know all men," &c. and after reciting the decree and appeal therefrom, proceeded as follows: "The condition of the obligation is such, that if the said *Clement Dorsey* shall not well and truly prosecute the said appeal, and also pay and satisfy to the said *Churles S. Smith* the amount of the debt as stated in the proceedings aforesaid, with interest and costs, in case the said decree shall be affirmed, and also all costs and damages that may be awarded by the court of appeals aforesaid, or shall arise by reason of the appeal

S, obtained a judgment in the county court against D, which was removed to and affirmed in the court of appeals. D afterwards obtained an injunction to stay proceedings thereon, which was continued until final hearing, when the chancellor decreed, that unless D should on or before, &c. pay to S a certain sum of money, with interest, &c the injunction should be dissolved. D appealed from that decree, and entered into an appeal bond, which was not, in point of form, agreeably to the act of 1713, ch. 4, but was approved by the chancellor. On motion of S for a rule on D, to show cause why an execution should not issue on the judgment of affirmance, notwithstanding the appeal from the decree of the chancellor, and the approval of the appeal bond—Rule refused.

1824.

Smith
v.
Dorsey

aforesaid, then," &c. The motion was argued, (after notice, &c.) before Buchanan, Ch. J. Earle, Martin, and Archer, J.

*Ashton & R. Johnson,* in support of the rule, contended, 1. That the court of chancery had no right to take a bond which could operate as a *supersedeas* to stay execution. 2. That the bond which had been taken was informal. 3. That if the bond operated to stay execution, it was only on the decree of the chancellor, and this was a decree upon which no execution could issue; but that it did not operate to stay execution on the judgment at law. They insisted, on the *first point,* that no bond could be given unless it was demanded by statute. That the acts of July 1721, *ch.* 14, *s.* 4; July 1729, *ch.* 3, *s.* 3; 1785, *ch.* 72, *s.* 27, provide for appeals from the court of chancery, but there is no mention made in them as to the bond to be given. It is admitted, that an appeal in *England* operates as a *supersedeas* without a bond being given; and there is no objection to its doing so here on the decree of the court of chancery, but it cannot have the effect to stay execution on the judgment at law. The act of 1713, *ch.* 4, is applicable only to judgments at law, and the bond in this case cannot be brought within its provisions. On the *second point.* The bond is not in form, if the court of chancery had a right to take one. Unless the bond is in the form prescribed by law, execution may issue. *Johnson vs. Goldsborough,* 1 *Harr. & Johns.* 499. The bond is defective in various particulars—it is made payable to *Smith,* omitting his executors, &c. The act of assembly is not referred to in the bond, but is wholly omitted. The word *effect* is also omitted. It is a material word, as the words to *prosecute the appeal with effect,* were held in *Karthaus vs. Owings, (ante* 134,) to mean to prosecute the appeal to a successful termination. The act of 1713, *ch.* 4, prescribes a *formula* which must be substantially if not strictly pursued—and so decided as to *femes covert* in *Hawkins et al. Lessee vs. Burress et al.* 1 *Harr. & Johns.* 513, where the word *ill-usage* was omitted; also in *Lewis's Lessee vs. Waters,* 3 *Harr. & M'Hen.* 430, where the word was *treats* instead of *threats;* also in *Smoot's Adm'r. vs. Bunbury's Ex'r.* 1 *Harr. & Johns.* 136, where the words *or any security* were omitted in the probat to an account; so also in *Shivers vs. Wilson,* 5 *Harr. & Johns.* 130,

where the form of the oath was not pursued. On the *third point.* The bond, if correctly taken, does not operate to stay execution on the judgment at law. The decree is one on which no execution can issue, and the bond, if to stay execution, must be on the decree upon which it operates, and not the judgment at law, with which it has nothing to do. The injunction being dissolved, there is nothing to stay execution on the judgment at law.

*Magruder* and *Taney,* against the rule. The right to issue execution on the judgment at law, is derived from the decree of the chancellor dissolving the injunction. That decree is suspended by the appeal, and bond being approved, all proceedings under the decree are suspended until a hearing in this court. What will be the decree in this court if the decree of the chancellor is reversed? Not that the injunction be revived, but that it be perpetual. The practice has universally been, that a bond in a case like the present, stays execution on the judgment at law. The party appeals as well from that part of the decree dissolving the injunction, as the part decreeing the sum of money that is due. In *England* no bond is required on appeals from chancery; but the appeal itself stays execution of the decree; and as the appeal itself, independent of a bond, is a *supersedeas,* the party, to entitle himself to an execution, must show that there is some law requiring a bond to be given. This is not a case where any bond was required to be given; but if a bond is necessary, and the one given is defective, this court would do what the chancellor would do—call on the defendant to give a correct one by a particular time. Why should a bond be given? One has already been given on obtaining the injunction, and none other is required. If the decree had given costs, then, to stay execution on the decree, a bond would be necessary. There are many cases where the party might appeal from a decree where no bond can at all be necessary. The question on the appeal in this case will be, whether or not the injunction ought to have been continued; and until decided on by this court the injunction must continue. The bond being approved by the chancellor, shows that it is the form usually given on appeals from decrees in chancery. If the form prescribed by the act of 1713 has not been literally complied with, it has been sub-

1824.

Harding
vs
Stevenson

June.

HARDING vs. STEVENSON.

*A transfer of property by a debtor to a creditor, with a view, or under the expectation of becoming an insolvent debtor, is made void by the act of 1812, ch. 77, s. 1, only for the purpose of vesting the property in the trustee of such debtor for the benefit of his general creditors.*

*Money, specific pieces of coin, which are tangible, may be taken in execution, the actual possession and ownership being in the defendant; but money in the hands of a sheriff cannot be taken by him under a fieri facias against the person who is entitled to receive it.*

*Though in such case, if the sheriff brings the money into court, he will be directed to pay it to the creditor, whose execution is in his hands against the property of him for whom it was levied.*

*A mere chose in action is not subject to execution.*

*An execution cannot be levied on the lien a judgment creditor has upon the lands of his debtor. So, though a fieri facias, from the time it is placed in the hands of the sheriff, binds the personal property of a debtor, yet an execution on a judgment against his creditor, cannot be levied upon the property so bound.*

*Where property had been consigned to A, who had acquired a lien only as consignee and pawnee, an execution sued out against him, cannot be legally levied on such property.*

APPEAL from *Baltimore* county court. This was an action on the case against a sheriff for a false return. The case was this:—At March term 1818, of *Baltimore* county court, the plaintiff, *Harding*, recovered judgment against a certain *Hugh Boyle*, for the sum of $3000, with interest from the 23d of July 1816, and costs; which was affirmed at June term 18[?9], in the court of appeals, with stay of execution until the 15th of December in same year. On the 16th of December 1819, a writ of *fieri facias* issued on this judgment, and on 20th of same month was placed in the hands of the defendant, (now appellee,) then sheriff of *Baltimore* county. *Boyle* was in possession and proprietor of 367 hogsheads of molasses, which arrived in *Baltimore* on the 16th of December 1819 from *Havanna*, and *Boyle* arrived on the same day from the same place. On the 17th of December 1819, *Boyle*, by deed, conveyed all his interest in said 367 hogsheads of molasses, to a certain *David Winchester*, reciting in that deed, that "whereas there were shipped at *Havanna*, in the island of *Cuba*, by Messrs. *Gray*, *Fernandis* & *Brother*, of that place, merchants, on board the ship *Mohawk*, now lying at the port of *Baltimore*, 367 hogsheads of molasses, consigned to the said *Hugh Boyle*; and where- as the said *Hugh Boyle* advanced, at the island of *Cuba* aforesaid, on account of the purchase of the said cargo of molasses, or for account of the said *Gray*, *Fernandis* and *Brother*, the sum of $7886, to be reimbursed and paid to him out of the sales of the said molasses, over and above the regular and usual commission upon such sales." The deed then, in consideration of $7886, transfers to *Winchester* the 367 hogsheads of molasses, in trust, to sell the same, and out of the proceeds of the sale to retain his commissions, and the said sum of $7886, with interest, and the surplus, to pay over to *Gray*, *Fernandis* & *Brother*, &c. The interest of *Boyle* in the molasses was truly