## EMMA O. SHARP *vs.* JOHN N. SHARP.

*Divorce a Mensa—Cruelty of Treatment.*

When the evidence shows that a husband repeatedly struck and beat his wife, and threatened to kill her, and once pointed a loaded pistol at her, that constitutes such cruelty of treatment as entitles the wife to a divorce *a mensa et thoro* under Code, Art. 16, sec. 37.

*Decided April 4th, 1907.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*James P. Gorter*, for the appellant.

*S. S. Field*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a bill in equity filed by the wife, Emma O. Sharp, against her husband, John N. Sharp, to procure a divorce *a mensa et thoro*, on the ground of alleged cruelty of treatment and excessively vicious conduct.

The defendant answered the bill of complaint and neither admitted nor denied its allegations, but asked for full proof thereof.

The parties were married on the 29th of January, 1902, in the city of Baltimore, and had two children. They lived together at various places until April 13th, 1904, when they separated and she went to the home of her parents, where she has since resided. The bill was filed on the 14th of April, 1904, and the principal question for our consideration, is one of fact, that is, does the proof disclosed by the record sustain

the charge of such cruel treatment or excessively vicious con-
duct on the part of the husband within the meaning of sec.
37, Art. 16, of the Code of Public General Laws, as to en-
title the wife, to a divorce.

The case was heard on bill, answer and proof, in the Circuit
Court No. 2, of Baltimore City, the wife was denied the re-
lief sought and the bill was dismissed.

We cannot concur in the conclusion reached by the Court
below.

We are of the opinion, after a careful review of the whole
testimony, that the conclusion there announced is against the
decided weight of the testimony, and the decree of the Court
below must be reversed.

We will now state the reasons which require us to make
this decision.

In the case of *Hawkins* v. *Hawkins,* 65 Md. 104, this Court
said, in stating what state of facts will authorize the granting
of a divorce *a mensa et thoro,* for cruelty of treatment and ex-
cessively vicious conduct. "The rule to be gathered from all
the authorities, that furnish safe guides upon this delicate sub-
ject, is, that the ground of complaint must be grave and
weighty, showing to the entire satisfaction of the Court, the
existence of such state of things as render it impossible that
the duties of the married life can be discharged. Where the
complaint is of cruel treatment, the mere austerity of temper,
petulance of manner, rudeness of language, a want of civil at-
tention, even occasional sallies of passion, if they do not
threaten bodily harm, do not constitute such cruelty of treat-
ment as to warrant the Court in pronouncing a degree of sep-
aration. But a series of acts of personal violence, or a
menace to the safety of life, limb or health, or any determined
threats of serious bodily hurt, have always been held sufficient
ground for a separation by the common law, and that is the
law to which we must appeal upon this subject."

In the case now under consideration, the evidence is clear
and convincing as to the charge of cruelty of treatment and
excessively vicious conduct on the part of the husband on

various occasions, to entitle the wife to a decree of separation.

The wife testified that at various times her husband struck her, was excessively cruel to her, and that his cruel treatment consisted of repeated blows, threats to kill and shoot her, and other vicious conduct.

On one occasion he struck her in the back with his fist. At another time, he pointed a loaded pistol and threatened to shoot her; he threw her when in a delicate condition over a chair, and she fell to the floor.

She further testified, that he repeatedly threatened to kill her, and his threats became so frequent, she believed he would do so and also kill her child; that he struck her and the child on the night of the 12th of April and repeatedly struck her when in bed, and that he repeated the blows on the morning of the 13th of April.

She also testified that she had often forgiven him for his treatment, but after the night of the 12th of April and the following morning she felt that her safety and that of her child required, she should leave him, and seek protection in the home of her parents.

The testimony of the wife, as above stated, is fully corroborated by other witnesses produced on the part of the appellant, and by the admissions of the husband himself.

Mrs. Dora Hugo testified, that Mr. Sharp admitted that he had beaten and struck his wife, and this was the cause of her leaving him; that he blamed it on his bad temper.

We have also the admissions of the husband, in the presence of the witness, John Hugo, and to the father and mother of the wife, that he had repeatedly struck her. "It is all my fault." "It is all my accursed temper; then I don't know what I am doing."

Mr. and Mrs. Laubheimer further testified, that the wife was almost a physical and mental wreck, when she came to their home, and in this they are corroborated by the testimony of Dr. Charles E. Brack, who was called, to render medical aid to Mrs. Sharp, who was then suffering from extreme nervousness the result of ill-treatment by her husband.

But apart from this we have the letters of the husband to the wife, dated the 13th and 23rd of April, 1904, after she had left him, wherein he asks forgiveness and practically admits the cruel way in which he had treated her. These letters in connection with the other evidence in the case, fully establishes the charge of cruelty of treatment, alleged in the wife's bill.

The principles and rules of law, upon which this and similar cases must rest are fully stated by this Court in *Hawkins* v. *Hawkins, supra,* and in *Barrere* v. *Barrere,* 4 John's Chan. 189. Mr. Nelson in his work on *Divorce and Separation,* 293, says: "It is not necessary to wait until an injury has been inflicted, for the law will, in a proper case intereferé to prevent an injury, which will probably be inflicted. The Court interferes not so much to punish an offense already committed as to relieve the party from an apprehended danger." Assuredly, says LORD STOWELL, the Court is not to wait until the hurt is actually done. If a husband threatens to shoot his wife, and shows a disposition to do so, the Court will interfere without waiting until he has shot her or attempted to do so. Nor is it necessary to wait until the defendant has attempted to execute his threats, since that would be folly in most cases. Where from evidence of hatred, malice, high temper, violent conduct, habits of intoxication, and lack of self-control, the Court apprehends that injury to the plaintiff's health will follow, then it will interfere. Where violence has been inflicted and threats are made, the Court should not hesitate to interfere, as the past, when considered with the attitude of the defendant, makes it clear that the violence will be repeated."

Applying and adopting the principles of law announced in the adjudicated cases and text-writers to the facts of this case, thère can be but one conclusion for us to reach, and that is that the wife is entitled to a decree for separation.

We have examined with some care the very able and carefully prepared brief, submitted by the learned counsel for the appellee and the authorities there cited, but we are unable to agree that they apply to the facts of this case. While we

agree, that the conduct of the wife, is not entirely free from censure, yet it was not such as to call for or justify such inhuman and cruel treatment, as the evidence in the case, shows was repeatedly inflicted by him.    In this case, as in *Hawkins* v. *Hawkins*, *supra*, the charge of cruelty of treatment is fully made out, and that entitles the plaintiff to a decree for a separation.

It will be seen, however, that by sec. 37 of Art. 16, of the Code, it is provided, that in all cases where divorce *a mensa et thoro* is decreed, it may be revoked at any time thereafter by the Court granting the same, upon the joint application of the parties to be discharged from the operation of the decree.

For the reasons we have given, we are of the opinion that the Court below was in error in dismissing the plaintiff's bill so the decree of the 28th of September, 1906, will be reversed and the cause remanded, to the end that a decree may be passed in accordance with the foregoing opinion. The wife's property rights, alimony and the care, education and custody of the children to be subject to the future order of Circuit Court No. 2, of Baltimore City.

> *Decree reversed and cause remanded with costs in this Court and the Court below.*