STATE OF MARYLAND *vs.* THE MARYLAND CLUB.

*Sale of Liquor on Sunday by Social Clubs.—Construction of Charter of Baltimore City.*

Section 682 of the charter of Baltimore City (Act of 1898 ch. 123) provides that no licensee under that article shall sell or furnish to any person intoxicating liquor on Sunday. The Act of 1898, ch. 246, makes it unlawful for any club or association to sell or furnish intoxicating liquors to its members or any other person without having first obtained a license and provided that no license should be granted except to legiti-

mate *bona fide* clubs. The Act cf 1906, ch. 278, amending the charter of Baltimore City, provided that if the applicant for a license to sell liquor desired a club license that fact must be stated in the application. *Held*, that it was the intention of the Legislautre by the Acts of 1898, ch. 246 and 1906, ch. 278, to bring social clubs in Baltimore City fully within all the provisions of the charter relating to the sale of liquor.

*Held*, further that the Maryland Club, a *bona fide* social organization in said city, incorporated in 1858, being required by the Acts of 1898, ch. 246 and 1906, ch. 278, to take out a license for the sale of liquor is a licensee under the Charter and as such is prohibited by sec. 682 of the Charter from selling liquor on Sunday, although such sale or furnishing of liquor be made only to its own members and not for profit.

*Decided April 26th, 1907.*

Appeal from the Criminal Court of Baltimore (HARLAN, C. J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*William S. Bryan, Jr., Attorney General* and *Albert S. J. Owens, State's Attorney,* for the appellant.

*Bernard Carter and Morris A. Soper* for the appellee.

BURKE J., delivered the opinion of the Court.

The Maryland Club, a *bona fide* social organization, incorporated under the laws of Maryland, was indicted in the Criminal Court of Baltimore on the 12th day of December, 1906, for the offense of selling and furnishing intoxicating liquors on Sunday, November 25th, 1906, in the City of Baltimore, to a certain person whose name was unknown to the Grand Jurors. The indictment contained four counts. The first count charged that the Maryland Club, a body corporate, duly incorporated, late of said city on the 25th day of November, in the year one thousand nine hundred and six, at the city aforesaid, the said day in the said year being the Lord's day, commonly called Sunday, and being then and there a body corporate, duly incorporated, in said State of Maryland, and being then and there a Club, and being then and there a licensee of the said State under the name of the Maryland

Club, then and there licensed as aforesaid, to sell, offer for sale, and keep for sale intoxicating liquors by retail by the drink in said city, and not being then and there a hotel keeper, unlawfully did then and there sell and *furnish* intoxicating liquors to a certain person to the Jurors aforesaid unknown, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

The second count alleges that the Maryland Club was incorporated by an Act of the General Assembly of Maryland passed in the year 1858, and sets out in full the act of incorporation; it then sets out an Act of the General Assembly of Maryland, known as chapter 22 of the Acts of 1892, by which the original charter of the Maryland Club was amended; it then alleges that the said Maryland Club during all of the time aforesaid was, and still is such corporation and body corporate as aforesaid; and that on the 25th day of November, in the year nineteen hundred and six, at the city of Baltimore, in the State of Maryland, said Maryland Club was, and still is such corporation and body corporate duly incorporated as aforesaid, and was on the said last mentioned day, and still is, at the city aforesaid, a club and licensee of said State licensed to sell, offer for sale, and keep for sale intoxicating liquors by retail by the drink in said city of Baltimore, and not being then and there on said 25th day of November in said year, nineteen hundred and six, at the city aforesaid, a hotel keeper, unlawfully at the city aforesaid, did on the said last mentioned date, to wit: November 25th, nineteen hundred and six, the last-mentioned day being the Lord's day, commonly called Sunday, sell and furnish at the city aforesaid, intoxicating liquors to a certain person whose name is to the jurors aforesaid unknown, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

The third count alleges that the said Maryland Club, a body corporate, duly incorporated, on the said 25th day of November, in the year of our Lord, nineteen hundred and six, at the

city aforesaid, the said day in the said year, being the Lord's day and Sabbath day, commonly called Sunday, and being then and there a body corporate, duly incorporated, and being then and there a club, society and association, and a licensee of the said State, under the name of the Maryland Club, then and there licensed to sell, offer for sale and keep for sale intoxicating liquors by retail by the drink in said city, and not being then and there a hotel keeper, unlawfully did sell and furnish on the said last mentioned day in the said year, at the city aforesaid, intoxicating liquors to a certain person whose name is to the jurors aforesaid unknown, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

The fourth count charges that said Maryland Club, a body corporate duly incorporated, on the said 25th day of November, in the year nineteen hundred and six, at the city aforesaid, the said last-mentioned day in the said year being the Lord's day, commonly called Sunday and being the Sabbath day, and the said Maryland Club being then and there a corporation, duly incorporated; and being then and there a club, society and association, and then and there a licensee of the said State, under the name Maryland Club, then and there licensed to sell, offer for sale and keep for sale intoxicating liquors by retail by the drink in said city, and not being then and there a hotel keeper, unlawfully did then and there sell, furnish and dispose of certain spirituous and fermented liquors, cordials, lager beer, wine, cider and intoxicating liquors to a certain person whose name is to the jurors aforesaid unknown, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

To this indictment the defendant filed two special pleas, to each of which the State demurred. The demurrer of the State to each of said special pleas was overruled by the Court, and, the State declining to traverse the pleas, judgment was entered that the traverser, the Maryland Club, be dismissed and discharged from said indictment. From this judgment the appeal now before us was taken.

The special pleas filed by the Maryland Club are quite lengthy, and only the substance of the first plea need be stated, as the identical defense presented by the first plea is relied on under the second.   It sets out the Act of 1858, ch. 95, by which it was incorporated, and by which it appears that "an association of citizens has been formed in the city of Baltimore, under the title of the Maryland Club, having for its object the promotion of regulated social intercourse among its members, and the extension of hospitable courtesies to strangers;" that upon the passage of said Act of incorporation the corporation thereby created, and as thereby authorized, organized itself as a social club for the accomplishment of the objects set forth in its said charter, committing the administration of said club to a board of twenty-five governors, and began to exercise the rights and privileges granted to it thereby, and continued in the exercise of the same up to and including the year 1892, in which year its charter was amended by an Act of the General Assembly of Maryland, being ch. 22 of the Acts of the General Assembly of Maryland of 1892; the amended charter is then set forth, and it is then alleged that "after the passage of said last mentioned Act of Assembly the said corporation, the Maryland Club continued in the exercise of the rights and privileges granted to it by its original charter and the aforesaid amendment thereof, and was in the exercise thereof at the times mentioned in the several counts of the indictment; and after the passage of the said Act of Assembly of Maryland in 1892, ch. 22, the said Maryland Club for the better accomplishment of the purposes of a social club, for the accomplishment of which it has been created and organized, did, at great cost and expense, erect and provide for the use of its members a large building situated at the southeast corner of Charles and Eager streets in the city of Baltimore, containing parlors, sitting rooms, sleeping rooms, reading rooms, library, billiard rooms, dining rooms, a cafe and restaurant, a large and commodious kitchen, store rooms for articles of food, wines, liquors, beers, and cigars, and other rooms adapted to the proper use of a first class social club;

and furnished and equipped said house and rooms with articles
suitable and adapted to the use of its members as a place
where they may meet from day to day and have the conven-
iences and advantages of a first class social club.    That a large
number of the members of the club from time to time, as well
on week days as on Sundays, get their meals in the said club
building, including breakfast, lunch, and dinner; that the mem-
bership of said club is divided into two classes designated as
resident members and non-resident members, the resident
members being those who reside in the city of Baltimore, and
the non-resident members being those who reside elsewhere;
that at the times mentioned in said indictment the number of
its resident members was approximately four hundred and
eighty-two (482), and its non-resident members one hundred
and seventy-six (176); that the initiation fee of each resident
member is one hundred and fifty (150) dollars, and of each
non-resident member (50) dollars, and the annual dues paid
by each of the resident members is seventy-five ($75) dollars,
and by each of the non-resident members thirty-six ($36) dol-
lars; that from the said fees and dues the said Maryland Club
derives an annual revenue each year of more than forty thou-
sand ($40,000) dollars.    That in the conduct of its affairs,
and for the purpose of carrying out the objects for which it was
incorporated, the said Maryland Club serves and furnishes arti-
cles of food, meals, *wines, liquors, beers,* and cigars, *which liquors,
wines and beers are known as intoxicating liquors, wines and
beers, to those of its members who from time to time ask to be
served and furnished therewith,* at times furnishing said intoxi-
cating liquors to members with meals and at times without
meals, *as well on Sundays as on week days;* that to enable it
to furnish the same to its said members it purchases and keeps
on hand the said articles, and furnishes the same to its mem-
bers at prices fixed by a committee of its board of governors,
and paid by the member or members ordering said articles;
that the prices so fixed for said meals, articles of food, cigars,
wines, liquors and beers, and the prices fixed for each of them,
are not fixed with the view of making by the said club any

profit in the furnishing of the same, but the prices are fixed
with the view of furnishing the said articles at a minimum cost
to its members, and such an amount only is charged as will
compensate for the cost of the said articles, and a reasonable
portion of the expenses of serving the same, taking into con-
sideration the cost of the service, including the wear and tear
of the articles used in connection therewith, the lighting, heat-
ing, use of the premises in which the said articles are furnished;
that the revenues derived from the furnishing of the said arti-
cles are not equal to the cost of furnishing the same, the differ-
ence between said cost and said revenues differing from year
to year, and large in amount in each and every year, and most
years running into thousands of dollars, up to and including
the year 1906; that said deficit is paid out of the revenues re-
ceived as aforesaid by the club from the fees and dues of its
members.    That no person other than resident and non-resi-
dent members are admitted to the privileges of said club ex-
cept a limited number of persons not residing in the State of
Maryland, but who are visitors to the city of Baltimore, and
upon invitation of members, with the sanction of the executive
committee of the board of governors, are admitted to the priv-
ileges of the club for a limited number of days, and that said
persons while so enjoying said privileges are members of said
club."

It then alleges that for the purpose of complying with the
laws of the State of Maryland and in order to be able to
furnish its members with liquors, wines and beers in the man-
ner hereinbefore set forth in the plea, the Maryland Club did
on the 6th day of April, 1906, file through its secretary,
George May, with the Board of Liquor License Commission-
ers of Baltimore City a petition for the grant of a Liquor
License.    This petition is then set forth, and states that it is
made by George May, of Baltimore City, as president, or
secretary of the club, society, or Association thereinafter
named, for and on behalf of the said club, society, or associ-
ation in accordance with the provision of section 81 A and
section 81 B of article 56 Code of Public General Laws of

Maryland: The petition states that the name of said club, society, or association, is the Maryland Club; that R. C. Hoffman is the president, and that said club, society, or association desires to *sell, barter, furnish, or dispense liquors, wines, and beers to its members*; that the name of the owner of said premises for which the license is applied for is the Maryland Club; that the petitioner "on behalf, and in the name and by the authority of the said organization hereby agrees to furnish to the Board of Liquor License Commissioners, whenever requested to do so, such facts and information as may be necessary or proper to satisfy the Board that the club, society or association hereby making application for license is in fact such legitimate and *bona fide* organization as it purports to be, and that such organization would not be a nuisance to the neighborhood where it is located or proposes to locate;" that the organization has not been indicted for any alleged violation of the law; and the petition states that the said organization is legitimate and *bona fide* organization for the purposes named in its certificate or incorporation or charter; that it is composed of reputable and law abiding citizens, and that this license is not intended to be and will not be used for any purpose or in any manner contrary to law or subversive of peace and good order. To this petition was annexed a sworn list of *bonà fide* members of said organization, as required by section 81 A. of Article 56 of the Code of Public General Laws. This petition was verified by the oath of Mr. May, as secretary of the Maryland Club.

It is then averred that the said "Board of Liquor License Commissioners decided to grant the license prayed for, and notified in writing the defendant that such decision had been made, and thereupon on the first day of May in said year, the defendant produced to the clerk of the Court of Common Pleas the said notification in writing and paid to the said clerk sum of Two hundred and fifty dollars, and the said clerk thereupon issued to the defendant the license granted to the defendant by the said board, which said license was of the tenor, purport and effect following, to wit:

$250 for 12 months.

License for the sale of liquor by retail at a club, society or association.

Baltimore City, to wit:

This is to certify that a license has this day been granted to the Maryland Club, No. 1 E. Eager street, to sell by retail, distilled liquors or any mixture of distilled liquors containing more than fifteen per cent alcohol, or fermented liquors containing less than fifteen per cent alcohol, under and by virtue of the provisions of Article 4 of the Code of Public Local Laws, title "City of Baltimore," sub-title "liquors and intoxicating drinks;" as amended by the Act of the General Assembly of Maryland of 1890–1892 and 1894, and chapter 364 of the Act of 1898."

The plea then concludes as follows: "And the Maryland Club further saith, that at all times from the time of its organization up to and including the time of the finding of said indictment, it has been, and it is now, a legitimate and *bona fide* social club, a legitimate and *bona fide* organization for the purposes named in its original charter, that is to say for the promotion of regulated social intercourse among its members and the extension of hospitable courtesies to strangers; that it is composed of reputable and law-abiding citizens; and that in pursuance of its said object it places upon its own members and all strangers admitted to its privileges, the obligation of preserving order, and decorum of language and behavior in the club house; and that said Maryland Club is not in any sense of the word a trading corporation or engaged in the sale of liquor for making a profit therefrom. And the Maryland Club says that the intoxicating liquors charged in each of said counts to have been sold on the day therein mentioned to a person to the jurors unknown, were by the said Maryland Club furnished to a member or members of said club without meals, and were so furnished in the manner hereinbefore set forth, and in no other manner."

The averments of the pleadings which have been stated present the conflicting theories of the State and the Maryland Club with respect to this case.

Section 385 of Article 27, Code of Public General Laws

provides, "that no person in this State shall *sell, dispose of barter*, or, if a *dealer* in anyone, or more of the articles of merchandise in this section mentioned, shall *give* away on the Sabbath day, commonly called Sunday, any tobacco, cigars, candy, soda, or mineral waters, spirituous or fermented liquors, cordials, lager beer, wine, cider or any other goods, wares or merchandise whatsoever; and any person violating any of the provisions of this section shall be liable to indictment in any Court in this State having criminal jurisdiction." And section 682 of the city charter declares that "no licensee under this subdivision of this Article shall sell or furnish to any person intoxicating liquors on any days upon which elections now or hereafter may be required by law to be held; nor on the Lord's day, commonly called Sunday, except that if the licensee is a hotel keeper he may supply such liquors, to be drunk in their rooms or with their meals, to *bona fide* guests; nor between the hours of twelve o'clock midnight and five o'clock, A. M., at any time; nor, except in hotels, shall conduct the business in any place in which an entrance shall be allowed other than directly from a public traveled way; *provided*, however, that a licensed dealer may, with the permission of the Board of Police Commissioners at *bona fide* entertainments of any society, club or corporation, sell intoxicating liquors between such hours as the board aforesaid may designate in said permit."

It will be observed that the allegations contained in the indictment are broad enough to support a conviction either under the general law, or under the section of the charter we have quoted. The first, second and third counts, as we have seen, aver that the defendant did *sell and furnish*, on the Sunday mentioned, intoxicating liquors, while the fourth count charges the defendant with having *sold, furnished and disposed of*, on the Sunday named, certain *spirituous and fermented liquors*, cordials, lager beer, wine, cider and *intoxicating liquors*. The position taken by the Maryland Club, as shown by its pleas, is that it is not a licensee under the subdivision of the city charter mentioned, but that it is a licensee under the

provisions of the Public General Law of the State, to wit, the Act of 1898, chapter 246, and that under the facts alleged in its special pleas it is not unlawful for it to sell or furnish to its members intoxicating liquors on Sunday.  The facts averred in the pleas, it is contended, bring the Maryland Club fully within the decision of this Court in the case of *Seim* v. *The Concordia Club*, 55 Md. 566, and constitute an effectual bar to the prosecution.

The State, while denying the authority of the Seim case, takes this further position:  That it is unlawful for any licensee under the subdivision of Article 4 of the Public Local Laws of Baltimore City relating to liquors and intoxicating drinks to sell or furnish to any person intoxicating liquors on Sunday; except as provided in section 682 of said Article.  But that the Maryland Club is such a licensee, and is not embraced within any of the exceptions expressed in section 682 of that Article.  Therefore, it is unlawful for it to sell or furnish intoxicating liquors to its members on Sunday.  The major premise of this syllogism must be admitted, and if the propositions asserted in the minor premise be true, the judgment in this case must be reversed.

We think the determination of the conflicting contentions of the parties depends upon the proper construction of the Acts of 1898, ch. 246, and 1906, ch. 278.  It must be borne in mind that all licenses for the sale of liquor are granted by the State in the exercise of its police powers.  It is a *mere permit*, which may be granted, or withheld at the pleasure of the State, and which may be modified, or annulled by the State at any time.  The State has a right to prescribe the conditions upon which license may be granted.  It may, therefore, be taken for granted that the source from which all licenses for the sale of intoxicating liquors is derived, whether in the city of Baltimore or elsewhere, is the authority of the State.  The subdivision of the City Charter (Act 1898, ch. 123), relating to intoxicating liquors, prescribes the conditions upon which all liquor licenses should be issued in the city of Baltimore. Licenses to sell, or furnish intoxicating liquors in said city

were required to be taken out in the mode and manner therein prescribed, and the exclusive power to grant licenses to sell intoxicating liquor in that city was committed by the law to the Board of Liquor License Commissioners for Baltimore City.   The provisions of the City Charter which deal with the sale of liquor and the granting of liquor licenses are merely a re-enactment of the Act of 1890, ch. 343, known as the high license law for Baltimore City.   The sections of the charter re-, lating to these subjects, as originally enacted, have been amended by the Acts of 1900, chapters 278, 442, and 704; Act 1902, ch. 228; and 1906, ch. 278.   There are several other Acts of Assembly defining certain territory in Baltimore City within which no license shall be granted, but these need not be noticed as they have no bearing upon the question before us.

By the original charter as thus amended, most careful and elaborate provisions have been made as to the sale of liquors in Baltimore City.   This Court in the case of *Trageser* v. *Gray*, 73 Md. 250, speaking through JUDGE BRYAN, of the Act of 1890, ch. 343, which, as we have said was made a part of the City Charter by the Act of 1898, ch. 123, said: "The Act of 1890, ch. 343, prescribed a new system for the regulation of the sale of liquors in the city of Baltimore.   A board was established, consisting of three commissioners, invested with a power of granting licenses to sell these liquors by retail. Every one applying for such license was obliged to file his petition with the board, setting forth a number of statements tending to show that he was a fit person to be licensed.    It was required to be verified by his own affidavit, and also to be sustained by a certificate of at least ten respectable persons, declaring that they were acquainted with the petitioner, and that they had good reasons to believe that all the statements of the petitioner were true, and that they therefore prayed that the license should be issued to him.   Provision was also made for giving extended notification of the petition, by advertisement in two newspapsrs of general circulation in the city. And also for the public hearing of this petition; and the petition of

other persons in favor of granting the license; and also remonstances against granting it. It was further provided that licenses to sell by retail should be granted only to citizens of the United States of temperate habits and good moral character. A number of other regulations were made, which it is not now necessary to state but they all show extreme and anxious solicitude on the part of the Legislature to diminish the evils arising from the excessive use of ardent spirits. If the commissioners should *grant* the license, the applicant was required to pay to the Clerk of the Court of Common Pleas two hundred and fifty dollars; and thereupon it became the duty of the said clerk to *issue* it."

As originally enacted, and until the first day of May, 1898, at which time the Act of 1898, chapter 246, became effective, *bona fide* social clubs of the character of the Maryland Club were not required to take out a liquor license in Baltimore City, and under the authority of the *Seim case, supra,* could neither be indicted for the sale of intoxicating liquors without license, nor for selling, or disposing of liquors to its members on Sunday, first, because as decided in that case, the liquor license laws did not apply to such a club, and secondly, because the members of such a corporation who obtained liquors at the club, by paying into the common fund the price fixed by the regulation of the society, could not be said in any sense to buy them from the corporation, nor could the corporation be said to sell them to the members within the meaning of the law prohibiting the sale, or disposing of spirituous or fermented liquors on Sunday. Such was the state of the law in Baltimore City at the time of the passage of the Act of 1898, chapter 246.

The learned Judge who passed upon the demurrers in the lower Court has correctly stated the evils intended to be corrected by the passage of this Act. "The evil," he said, "which I think the Legislature intended to reach by the passage of the Act of 1898, chapter 246, grew out of the condition of the law between 1890 and 1898. During this period in Baltimore City, saloons were required to pay a license fee of

two hundred and fifty dollars, and there were so called high license laws in force in other parts of the State; as, for example, in Havre de Grace, where the license fee under the Act of 1890 chapter 180, section 192, was three hundred and fifty dollars. It was easy to evade the payment of these fees and commit a fraud upon the revenue of the State. A saloon keeper taking the advantage of the general incorporation law, could get four friends to join him in executing and acknowledging a certificate of incorporation for a social club; which certificate when approved by a Judge as being in proper form and duly recorded, would constitute the incorporators a body corporate; and this body could carry on a retail liquor business without a license by the simple expedient of requiring any person who wanted a drink to sign a constitution as a condition precedent to getting it. In point of fact, the number of such clubs formed during this period was so great, and their purpose was so well known, that they were familiarly spoken of as Beer Clubs·''

The Act of 1898, chapter 246, made it unlawful for any club, society, or association whatever, whether incorporated or not, now in existence, or hereafter to be formed, to sell, give barter, or in any manner furnish, or dispense to its members, or any other person, or persons any intoxicating liquors without first having obtained a license as therein provided. After making it unlawful for clubs, societies etc., to sell, give, barter, furnish, or dispense to their members intoxicating liquors without license, it provided *by whom and under what conditions the license should be granted.* The act did not grant the license, but it conferred authority upon certain well known agencies to grant it, when the applicant had first complied with the reqirements of the act, and when the person or tribunal authorized to grant the license "shall be satisfied that the club making application for license is in fact such legitimate and *bona fide* organization as it purports to be, and such organization would not be a menace where it proposes to locate." This act did not apply to Baltimore and Washington counties, because in those counties there were local laws covering this subject.

The Act of 1906, chapter 278, amended the sub-title of the city charter relating to liquors, and, among other things, provided what the application for the license should contain. If the applicant desired a *club license* it was made necessary to state that fact in the application. It seems to us to have been the evident intention of the Legislature by the Acts of 1898, chapter 246 and of 1906, chapter 278 to bring a social club applying for a license in Baltimore City fully and completely within all the provisions of the sub-title of the city charter relating to intoxicating drinks which in their nature are properly applicable thereto, and that a club to which a license has been granted by the Board of Liquor License Commissioners is as much a licensee under that subdivision of the charter as is an individual to whom it may have granted a license. It by no means follows that because the Act of 1898, chapter 246, was intended to remedy the evils mentioned, a licensed club in Baltimore City is not to be held subject to such provisions of the charter as may be properly applied to it, or that it is not liable, upon conviction, to the penalty prescribed by section 685 of the charter for the sale of liquors on Sunday. The conclusion that it is not so liable, it appears to us, can only be reached by a forced and overstrict construction of the Acts of Assembly referred to. We, therefore, decide that the Maryland Club is a licensee under the subdivision of the city charter relating to the sale of liquors and intoxicating drinks, and if the allegations of the indictment be true it has committed the offense of selling, or furnishing intoxicating liquors on Sunday within the meaning of section 682 of the city charter. It follows that the judgment appealed against must be reversed.

> *Judgment reversed, and the case remanded, with costs to the appellant.*