MARCEL GARSAUD, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61354. Filed August 30, 1957.

*Marcel Garsaud*, pro se.
*J. C. Linge, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies in petitioner's income tax and additions to tax for the year 1951 as follows:

| | |
|---|---|
| Deficiency in income tax | $437. 01 |
| Addition to tax (sec. 294 (d) (1) (A)) | 40. 03 |
| Addition to tax (sec. 294 (d) (2)) | 26. 68 |

The issues are (1) whether petitioner is entitled to an exemption of $600 for Elizabeth Garsaud under section 25 (b) (1) (A) of the 1939 Internal Revenue Code; [1] (2) whether petitioner is entitled to a deduction in the amount of $1,618.35 for medical expenses paid by him but incurred by Elizabeth Garsaud in 1951; (3) whether petitioner is liable for an addition to tax in the amount of $40.03 under section 294 (d) (1) (A) for failure to file a timely declaration of estimated tax for the year 1951; and (4) whether petitioner is liable for an addition to tax in the amount of $26.68 under section 294 (d) (2) for substantial underestimation of estimated tax for the year 1951. All of the facts have been stipulated.

Petitioner, a resident of New Orleans, Louisiana, filed an individual Federal income tax return for the year 1951 with the then collector of internal revenue for the district of Louisiana.

On May 22, 1950, there was entered in the Civil District Court for the Parish of Orleans, a judgment in the case of *Marcel Garsaud* v. *Mrs. Marcel Garsaud* providing, as follows:

IT IS ORDERED, ADJUGED [sic] AND DECREED, that the default herein entered on April 28th, 1950, be now confirmed and made final and, accordingly, let there be judgment herein in favor of the plaintiff, Marcel Garsaud, and against de-

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

fendant, Mrs. Marcel Garsaud, wife of Marcel Garsaud, decreeing a separation "a mensa et thoro" between them.

On March 19, 1952, the same court entered a judgment in an action between the same parties "decreeing a divorce 'a vinculo matrimonii' between them, and forever dissolving the bonds of matrimony heretofore existing between them." There was no provision in either judgment for the payment of alimony.

During the year 1951 the petitioner paid medical expenses incurred by Elizabeth during that year in the amount of $1,618.35, which amount he claimed as a deduction in his return filed for 1951. Respondent, in his statutory notice of deficiency, disallowed all of the expenses claimed by the petitioner, amounting to $2,648.18. This total includes the disallowed medical expenses incurred by Elizabeth. Petitioner concedes that a deduction of $134.59 claimed for car repairs was properly disallowed. Respondent concedes that, out of the total of $2,648.18 disallowed, the amount of $895.24 is properly deductible. In lieu of this amount the respondent allowed the petitioner a standard deduction of $1,000.

Petitioner received a salary of $10,600 in the year 1951. In his return for 1951 the petitioner claimed a $600 exemption credit for Elizabeth, which was disallowed by the respondent.

Whether petitioner is entitled to the exemption credit for Elizabeth and the deduction of medical expenses incurred by her and paid by petitioner depends upon whether he was still married to Elizabeth after the decree of separation from bed and board (*a mensa et thoro*), within the meaning of the statutes granting the exemption credit and the deduction. Because of the similarity of the statutes granting the exemption credit and the deduction, the two issues can be considered together. It is evident from the legislative history that Congress intended a uniform application of the sections. See S. Rept. No. 1013, 80th Cong., 2d Sess., 1948–1 C. B. 285, 324; see also *Marriner S. Eccles*, 19 T. C. 1049, 1053, affirmed per curiam 208 F. 2d 796.

An exemption of $600 is allowed under the provisions of section 25 (b) (1) (A) "for the spouse of the taxpayer" and section 25 (b) (2) (B) provides that for the purposes of the above statute, "an individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married."

A deduction for medical expenses for the taxpayer's "spouse" which is paid during the taxable year by the taxpayer is allowed by section 23 (x) and the section states, in part, "The determination of whether an individual is married at any time during the taxable year shall be made in accordance with the provisions of section 51 (b) (5)." The wording of section 51 (b) (5) is almost identical with section 25 (b) (2) (B) previously quoted, in that section 51 (b) (5) provides "an in-

dividual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married."

The first question to be decided is whether petitioner was legally separated from Elizabeth under a decree of divorce by the first decree of separation from bed and board. No argument can be made that such a decree would constitute a decree of separate maintenance.

In the law of domestic relations it has always been recognized that divorces may be of two types, absolute or limited. "In most states either an absolute or a limited divorce may be granted." 27 C. J. S., Divorce, sec. 160. There can be no question but that the State of Louisiana is a State that grants the two types of limited and absolute divorces. In fact, the very latin terms set forth in the two judgments are the terms usually employed whenever a general definition is made of an absolute and a limited divorce. See 27 C. J. S., Divorce, sec. 1, p. 522, where it is stated:

> Divorces are of two distinct types, absolute or a vinculo matrimonii, and limited or a mensa et thoro. An absolute divorce or divorce a vinculo matrimonii, sometimes termed simply a divorce, terminates the marriage relation. A limited divorce or divorce a mensa et thoro, sometimes called a legal or judicial separation, suspends the marriage relation and modifies its duties and obligations, leaving the bond in full force.

To determine the effect of a separation from bed and board we must examine the Louisiana statutes and the pertinent court decisions. Under the Louisiana Civil Code, article 136, a separation from bed and board "does not dissolve the bond of matrimony, since the separated husband and wife are not at liberty to marry again; but it puts an end to their conjugal cohabitation, and to the common concerns, which existed between them." Also, a separation from bed and board dissolves the community in the State of Louisiana. Article 155 of the Louisiana Civil Code provides, as follows:

> 155 [151] (N 311). **Separation of goods and effects.**—Separation from bed and board carries with it separation of goods and effects. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary, and two witnesses, which act shall be recorded in the conveyance records of the parish where said parties are domiciled.

Finally, article 924 of the Louisiana Civil Code provides that a wife, while separated under a decree of separation from bed and board, cannot inherit from the husband's estate in intestacy.

It is evident from the cited sections of the Louisiana Civil Code that a decree of separation from bed and board is a final decree with a very definite effect on the relationship of the husband and wife. It is a limited type of divorce. In Louisiana, after obtaining a judgment of separation from bed and board, a period of 1 year must elapse before bringing a separate action to obtain a judgment of absolute divorce.

La. Civ. Code, art. 139. The two proceedings are separate and distinct, and the proceeding for an absolute divorce is not a mere continuation of the proceeding for a separation from bed and board. *Donats* v. *Frillot*, 40 So. 634 (La. 1906). It cannot be said, therefore, that a decree of separation from bed and board is interlocutory in nature. See *Marriner S. Eccles, supra.*

It is also recognized by the Louisiana courts that a husband, under a decree of separation from bed and board, is not, absent any provisions in the decree, liable for medical expenses of his spouse, and that a spouse, under such a decree, cannot contract for the community. *Dauterive* v. *Sternfels*, 164 So. 349 (La. 1935), rehearing denied 164 So. 815. There is nothing in the record here to show that petitioner was liable for the medical expenses incurred by his wife.

We are convinced that the judgment of May 22, 1950, decreeing a separation *a mensa et thoro* between petitioner and Elizabeth is a limited divorce decree. The question remains whether the phrase "decree of divorce" as used in the statutes (secs. 25 (b) (2) (B) and 51 (b) (5)) was meant to include the decree of limited divorce. We hold it was.

As earlier pointed out, the divorce decree of limited divorce is recognized by most States. Congress was legislating with respect to State court decrees, and the range of unmarried status for the purpose of the statutes was to extend from the separation by decrees of divorce to separate maintenance. There is much more separation under a limited divorce decree than there is under a decree of separate maintenance. It is somewhat logical to assume Congress meant the types of divorce decrees that are granted by most States. But the most convincing argument that Congress intended the phrase "decree of divorce" to include the decree of limited divorce, is found in the language of the Senate report with respect to section 25 (b) (2). See S. Rept. No. 1013, 80th Cong., 2d Sess., 1948-1, C. B. 285, 324, as follows:

Section 25 (b) (2) of the Code, as amended by this section of the bill, corresponds to section 25 (b) (2) of existing law and relates to the determination of marital status for the purposes of the credits provided with respect to a spouse in section 25 (b). Section 25 (b) (2) provides two rules. The first rule is that the determination of whether an individual is married is to be made as of the close of his taxable year, unless his spouse dies during the taxable year of such individual, in which case such determination shall be made as of the time of such death. This rule is, in substance, the same as that provided for in existing law for the purposes of section 25 (b). The second rule is that an individual *legally separated (although not absolutely divorced)* from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. * * * [Emphasis added.]

The intent of Congress appears to be that any separation by a divorce decree that is less than an absolute divorce, or in other words,

is a limited divorce, will suffice to render the parties unmarried for the purpose of the statute.

We hold respondent was right in disallowing the exemption and deduction because after the decree of May 22, 1950, petitioner was not married for the purpose of the exemption and the deduction statutes previously referred to.

Respondent determined an addition to tax for the year 1951 under section 294 (d) (1) (A). Petitioner admits that he did not file a declaration of estimated tax for that year, and it is apparent that, with an annual salary of $10,600 he was required to do so under the provisions of section 58.[2] Petitioner has not shown that his failure to file a declaration was due to reasonable cause and not to willful neglect. Respondent is sustained on this issue.

An addition to tax of $26.68 was also determined for 1951 by the respondent under section 294 (d) (2) for substantial underestimation of the estimated tax.[3] Petitioner's income tax liability for 1951, as determined by respondent, is $1,936, and during the year the tax withheld was $1,491.20. No declaration of estimated tax was filed by the petitioner, and we have not been shown that such failure to file was due to reasonable cause and not to willful neglect. We hold that petitioner is liable for the addition to tax under section 294 (d) (2). *G. E. Fuller*, 20 T. C. 308, affd. 213 F. 2d 102.

*Decision will be entered for the respondent.*

---

[2] SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.

(a) REQUIREMENT OF DECLARATION.—Every individual (other than an estate or trust and other than a nonresident alien with respect to whose wages, as defined in section 1621 (a), withholding under Subchapter D of Chapter 9 is not made applicable, but including every alien individual who is a resident of Puerto Rico during the entire taxable year) shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if—

(1) his gross income from wages (as defined in section 1621) can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25 (b) ; or

[3] SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.
(d) ESTIMATED TAX.—

* * * * * * *

(2) SUBSTANTIAL UNDERESTIMATE OF ESTIMATED TAX.—If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), in the case of individuals other than farmers exercising an election under section 60 (a), or 66⅔ per centum of such tax so determined in the case of such farmers, exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. * * *