KENNETH T. SULLIVAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60294. Filed October 18, 1957.

*Milton I. Baldinger, Esq.,* for the petitioner.
*John W. Dowdle, Jr., Esq.,* for the respondent.

OPINION.

TRAIN, *Judge:* The Commissioner determined a deficiency of $7,-265.08 in the income tax of petitioner for the calendar year 1951. The only question for decision is whether petitioner and Carrie Miller Sullivan were husband and wife at the end of the year so as to entitle them to file a joint return and include Carrie's personal exemption as a taxpayer on such return.

All the facts have been stipulated and are hereby found as stipulated.

Petitioner, an individual residing in Montgomery County, Maryland, and Carrie Sullivan, on March 15, 1952, filed a purported joint return for the taxable year ended December 31, 1951, with the then collector of internal revenue for the district of Maryland. On the return they each claimed their personal exemptions as taxpayers.

Petitioner and Carrie were married on May 7, 1931. On June 9, 1950, Carrie filed suit for a limited divorce and for the custody of their three children. Petitioner filed a cross bill praying for a limited divorce and custody. On October 15, 1951, the Circuit Court for Montgomery County granted a divorce *a mensa et thoro* to the petitioner and gave custody of the children to Carrie. Both parties to that proceeding filed appeals prior to January 1, 1952. Neither party filed an appeal bond. On April 3, 1952, after the purported joint return had been filed, the Court of Appeals of Maryland affirmed the decree of the Circuit Court.

Petitioner contends that he and Carrie were husband and wife at the end of the year within the meaning of the relevant statute, section 51 (b) of the Internal Revenue Code of 1939.[1] He contends that the divorce decree was not final at that time since it was on appeal. Respondent contends that, regardless of the appeal, the decree was final and in effect as of the end of the year, and, therefore, petitioner and Carrie were legally separated under a decree of divorce and not husband and wife for purposes of section 51 (b).

We agree with the respondent.

Petitioner does not seriously contend that had there been no appeal it would be proper for petitioner to file a joint return and such a contention would be without merit. *Marcel Garsaud*, 28 T. C. 1086 (1957). In the *Garsaud* case, petitioner, separated from his spouse under a Louisiana decree of separation *a mensa et thoro*, claimed an exemption credit on a separate return for his spouse under section 25 (b) (1) (A) of the 1939 Code. We held that the credit was properly disallowed by the Commissioner because petitioner in that case was legally separated from his spouse under a final decree of divorce. We

---

[1] SEC. 51. INDIVIDUAL RETURNS.

(b) HUSBAND AND WIFE.—

(1) IN GENERAL.—A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

\* \* \* \* \* \* \*

(5) DETERMINATION OF STATUS.—For the purposes of this section—

(A) the status as husband and wife of two individuals having taxable years beginning on the same day shall be determined—

(i) if both have the same taxable year—as of the close of such year; and

(ii) if one dies before the close of the taxable year of the other—as of the time of such death; and

(B) an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married.

found that Congress intended a decree of limited or absolute divorce to be sufficient to abolish the status of husband and wife for purposes of the section in question, quoting S. Rept. No. 1013, 80th Cong., 2d Sess., 1948–1 C. B. 285, which states, in part, at p. 324:

The second rule is that an individual legally separated (although not absolutely divorced) from his spouse under a decree of divorce or of separate maintenance shall not be considered as married.

While the *Garsaud* case involved the claim of an exemption under section 25 (b) (1) (A),[2] the statutory test of status is similar to that provided by section 51 (b) (5), and the same rule must govern. In order to dispel any doubt on this score, the above-quoted report of the Senate Committee on Finance continues, again at p. 324:

Similar rules for the determination of status are provided in section 23 (aa) (6) of the Code (as added by section 302 (c) of the bill, relating to the standard deduction, and in section 51 (b) (5) of the Code (as added by section 303 of the bill) relating to joint returns. *A uniform construction of all these provisions is intended.* [Emphasis added.]

Likewise in Maryland, a decree of divorce *a mensa et thoro* is a judicial or legal separation which definitely alters the marital status of the parties. It relieves the parties of certain duties and removes certain rights, and can result in the determination of alimony and support payments and custody. *Miller* v. *Miller*, 153 Md. 213, 138 Atl. 22 (1927); *Sharp* v. *Sharp*, 105 Md. 585, 66 Atl. 463 (1907); Md. Ann. Code, art. 16, sec. 34 (1951). It is granted for the same reasons as is an absolute divorce, though the grounds need not be of the same intensity or duration. Md. Ann. Code, sec. 34, *supra; Flohr* v. *Flohr*, 195 Md. 482, 73 A. 2d 874 (1950); *Miller* v. *Miller, supra; Levering* v. *Levering*, 16 Md. 213 (1860). Such a decree is final and clearly distinguishable from an interlocutory decree. In Maryland, only final decrees are appealable; interlocutory decrees are not, with certain exceptions irrelevant here. It is evident that a limited divorce decree can be appealed. Md. Ann. Code, art. 5, sec. 30 (1951); Md. Ann. Code, art. 5, sec. 31 (1951); *Waverly Mut. & Permanent Land, L. & B. Ass'n* v. *Buck*, 64 Md. 338, 1 Atl. 561 (1885); *Newbold* v. *Green*, 122 Md. 648, 90 Atl. 513 (1914); *Heath & Lovejoy* v. *Irelan*, 11 Md. 388. By its title and terms, the instant decree is final and presently effective, presently altering rights and status, and thus distinguishable from interlocutory divorce decrees, which either by their very terms, or by statute, are effective only after some prescribed lapse of time. Unlike an interlocutory decree, a limited divorce decree is the only de-

---

[2] The exemption for a taxpayer's spouse under the second clause of section 25 (b) (1) (A) is available only when the taxpayer files a separate return. The exemption claimed for Carrie in the instant case is based on the first clause of section 25 (b) (1) (A) and is available to her as a taxpayer, regardless of her income, if she is eligible to file and does properly file a joint return under section 51 (b). While the test for determining marital status for both exemptions is the same, the two exemptions should not be confused.

cree that need be entered to permanently fix the status of the parties, though it is modifiable. *J. R. Calhoun, Jr.*, 27 T. C. 115 (1956) ; *Alice Humphreys Evans*, 19 T. C. 1102 (1953), affd. 211 F. 2d 378 (C. A. 10, 1954) ; *Marriner S. Eccles*, 19 T. C. 1049 (1953), affd. 208 F. 2d 796 (C. A. 4, 1953) ; Md. Ann. Code, sec. 34, *supra*. As petitioner contends, it is true that a limited divorce decree does not dissolve the marital bond and that neither party can remarry, but in light of the *Garsaud* case, the language of section 51 (b) (5) (B), and the reasoning of the *Eccles* and *Evans* cases, that fact is not controlling. Had the decree not been appealed, the *Garsaud* case would control the disposition of the present case.

Therefore, one question to be decided is whether the appeal vacated or annulled the decree as of the end of the year, and before affirmance by the appellate court. That is, was the decree wholly ineffective, thus leaving the parties' marital status unaltered as though no decree had been rendered?

State law determines the marital status of the parties. *J. R. Calhoun, Jr., supra; Alice Humphreys Evans, supra; Marriner S. Eccles, supra*. Likewise, it would seem proper to apply the rule of law regarding the effect of an appeal on the decree of the State which rendered the decree. Assuming that State law does control the question of the effect of the appeal, we have respondent's contention that article 5, section 33 of the Maryland Annotated Code (1951) decides the issue.[3]

Prior to the enactment of the predecessors of the statute, an appeal evidently did not annul an equity decree or even stay execution of the decree appealed from.[4] But, pending the appeal, proceedings could be stayed by order of the chancellor on application to him for

---

[3] Md. Ann. Code, art. 5, sec. 33 (1951).

No appeal from any decree or order shall stay the execution or suspend the operation of such decree or order, unless the party praying the appeal shall give bond, with security, to indemnify the other party or parties from all loss or injury which said party or parties may sustain by reason of such appeal and the staying the execution or operation of such decree or order ; * * * however, that if in its discretion the court in which such proceedings are pending shall decide that the case is not a proper one for such stay, such court may pass an order upon such terms (as to duration, keeping an account, giving security, etc.) as to it may seem fit, directing that the decree or order appealed from shall not be stayed by such appeal, or only so far or on such terms as the court shall therein direct.

[4] At common law, a writ of error did not vacate or annul the judgment sought to be reviewed. And under modern statutes, where the appeal is in the nature of a writ of error, the judgment is not vacated or annulled. *Fort* v. *Fort*. 118 Tenn. 103, 101 S. W. 433 (1907) ; Md. Ann. Code, art. 5, sec. 57 (1951). But when an appeal brings up the entire case *de novo*, as was the case in chancery, it has occasionally been said to annul the judgment or decree, in the absence of statutory modification, so that no further proceedings could be maintained until after determination on appeal. *Fort* v. *Fort, supra*. Under a statute providing that the appellate court should be possessed of the whole case as fully as was the trial court, it was held that the appeal did not vacate or set aside judgment of the lower court, but only that the judgment was suspended, and the marriage relation was not revived by the appeal. *Masterson* v. *Ogden*, 78 Wash. 644, 139 Pac. 654 (1914) ; but see *Lippincott* v. *Lippincott*, 141 Neb. 186, 3 N. W. 2d 207 (1942) ; *Woods* v. *Woods*, 236 Mo. App. 855, 159 S. W. 2d 320 (1942).

that purpose. While appeal bonds were not expressly authorized by statute, they were allowed for this purpose by analogy to the statutes providing for the same in the case of appeals in courts of common law. *Thompson* v. *M'Kim*, 6 Har. & J. 302 (Md., 1825) ; *Smith* v. *Dorsey*, 6 Har. & J. 261 (Md., 1824) ; see *Fullerton* v. *Miller*, 22 Md. 1 (1864). Since the only effect of filing an appeal bond was to stay execution of the decree, it seems evident that an appeal did not annul or vacate the decree.

One of the early predecessors of the present statute, ch. 374, Acts of 1853 (Md.), provided for no stay of the operation of an injunction or of the order refusing to dissolve an injunction unless the appellant gave bond, and "upon the giving of such bond, the appeal shall stay the operation * * * *in the same manner as appeals do from final decrees.*" (Emphasis added.) In *Blondheim* v. *Moore*, 11 Md. 365, 371 (1857), there is dictum that under that statute, because of such language, upon filing bond the operation and effect of the injunction would wholly cease. The dissent's view that an appeal stays further proceedings pending the appeal and does nothing more coincides with those expressed in the earlier cases of *Thompson* v. *M'Kim, supra,* and *Smith* v. *Dorsey, supra,* and would seem to be embodied in the present statute. The cases consistently hold that the only effect of filing bond is to stay execution of the decree, and unless bond is filed there can be no stay. *Holloway* v. *Safe Deposit & Trust Co.,* 152 Md. 289, 136 Atl. 269 (1927) ; *Shirk* v. *Soper*, 144 Md. 269, 124 Atl. 911 (1923) ; *McNiece* v. *Eliason,* 78 Md. 168, 27 Atl. 940 (1893). The advantages of article 5, section 33, *supra,* footnote 3, are unavailable in divorce proceedings, and after a decree of divorce *a mensa et thoro* and during the pending of an appeal there cannot be a stay of an order for alimony and counsel fees to the wife. *Berman* v. *Berman,* 191 Md. 699, 62 A. 2d 787 (1948) ; *Chappell* v. *Chappell,* 86 Md. 532, 39 Atl. 984 (1898).

The statute embodies the only rule ever known in Maryland regarding the effect of an appeal on a final decree, and this rule provides only for a stay of execution of the decree upon filing bond. The rule is wholly inapplicable to divorce cases. Therefore, it seems certain that the decree was not only not stayed, but was not vacated or annulled during the pendency of the appeal. Petitioner cites no authority for his contention that there is some method whereby a divorce decree or order can "be stayed" as he puts it, on appeal, and we have found none.

Petitioner contends that because the decree was on appeal, it is indistinguishable from an interlocutory decree of divorce rendered during the taxable year which did not become final until after the end of the year. In such cases, the law is clearly established that a joint return is proper. *J. R. Calhoun, Jr., supra; Marriner S. Eccles,*

*supra.* However, the distinction between a final and an interlocutory decree has already been made, and since we conclude that the filing of the appeal did not vacate or annul the decree, such contention is without merit. Further, there is nothing in respondent's Regulations 111, section 29.22 (k), which implies that the term "final decree" means one not on appeal. That the appellate court might have reversed, remanded, modified, or affirmed the decree does not in any way affect the "finality" of the lower court decree.

Petitioner contends that the general rule is that if after the filing of an appeal from a final decree of divorce, one of the parties dies, not only the appeal, but the "entire proceeding" abates, suggesting that in such instance the lower court decree is a nullity. See *Fort* v. *Fort*, 118 Tenn. 103, 101 S. W. 433 (1907). But we are not convinced that it is the general rule, nor have we found any authority that it is the Maryland rule. Even if it were, we cannot say that it would control the disposition of the present case where the facts are different.

Petitioner's argument that the respondent is taking an inconsistent position concerning disallowance of alimony exclusions is unwarranted because we find no evidence in the record of any claim for or disallowance of alimony. The divorce decree did not provide for alimony to either party.

We hold that petitioner and Carrie Miller Sullivan were legally separated under a decree of divorce and were not husband and wife as of the close of 1951 within the meaning of section 51 (b) (5). Therefore, they were not entitled to file a joint return for 1951, nor could Carrie's personal exemption as a taxpayer be properly claimed on the return.

No other adjustments are assigned as error by the petitioner.

*Decision will be entered for the respondent.*