COURT OF APPEALS, JUNE TERM, 1805.

SCRIVENER's Adm'r. *vs.* SCRIVENER's Ex'rs.

APPEAL from a decree of the court of chancery *dismissing* the appellant's bill of complaint. The bill, filed on the 28th of March 1799, charges that *Mary Scrivener*, mother of *William Scrivener*, the complainant's intestate, obtained letters of administration on the estate of *John Scrivener*, the father of the said *William*, and paid the said *William* sundry specific articles of stock, &c. and two negro women, to wit, *Grace* and *Hagar*, which *Hagar* afterwards had issue a daughter called *Meriah*, both now alive. That the trator of the mother, who was administratrix of the father. In the answer of the defendants they relied on the act of limitations. *Decreed* to the complainant a proportion of the personal estate of the intestate's mother, not included in the inventory returned by her administrator; also for the hire of certain slaves the property of the intestate and of his deceased brother—and after allowing certain deductions to be made in favour of the defendants out of the personal estate of the complainant's intestate, the residue decreed to be paid to the complainant, with interest from the time of filing the bill.

General exceptions to the auditor's report ought not to be made. Every exception ought to point out a particular error

The court of chancery neither decides on titles to property, nor determines important litigated points of law.

On a bill filed in the court of chancery by the administrator of an intestate, claiming (after a number of years had elapsed,) in the intestate's own right, and in right of a deceased brother, distributive shares of the personal estates of his father and brother, and a distributive share of his mother's personal estate, against the executors of another brother, who was the administrator of

said *William* was entitled to a distributive part of the personal estate of his deceased brother, *Richard Scrivener*, and that in satisfaction of said distributory portion, some stock, and a negro man called *Tim*, was delivered to him. That the said *Mary Scrivener*, in her life-time, after the delivery of negro *Grace* to the said *William*, sold the said negro woman *Grace*, and received the purchase money, and has never accounted for the same to the said *William*. That the said *Mary* died intestate in the year 1772, and that *Francis Scrivener*, brother of the said *William*, administered on her estate, and afterwards paid two negroes to the said *William* in part of his share of his mother's personal estate, but kept and detained the rest of the personal estate to which the said *William* was by law entitled. That the said *William* is lately dead, leaving several poor relations, to whom their legal proportion of his estate is an object of consequence; that he was for thirty years last past in a state of such imbecility of mind as to be utterly incapable of doing or transacting any business, or of making any contract or disposition of property. That *Francis Scrivener* is lately dead, having made his will and thereby appointed the defendants his executors, who have proved the will, and obtained letters testamentary. That the said *Francis* took into his possession the whole negroes and personal property of the said *William* some time in 1772, and has used, worked, and enjoyed the same to his own exclusive use and benefit. until his death, and by the defendants since that period to the present time; and neither the said *Francis* in his life-time, nor the defendants since his death, have accounted for or paid over to the said *William* or the said complainant, any thing or satisfaction therefor. That the said *Francis*, taking advantage of his brother's weakness and imbecility of mind, kept him in an out-house, clothed, fed, and worked him as a negro, and with his negroes, and received from his labour, through a period of many years, great pecuniary benefit and emolument, far exceeding the value of his food and clothes. That

the said *Francis*, to cover his improper and fraudulent conduct, drew up a will, in which he devised to himself all the estate of the said *William*, and then caused the said *William* to sign the same, thereby intending to secure to himself his estate and exemption from any account as to its value—But that the said *William*, at the time of signing the said instrument or will, was, by reason of mental weakness and imbecility, foolish, childish, and incapable of making or understanding one. That the said instrument, purporting to be the will of the said *William*, on the decease of the said *Francis*, came to the hands of the defendants, who with great honesty and fairness, knowing the circumstances of their personal knowledge, and calling on the witness, who refused to prove it, permitted letters of administration in the usual form of intestacy to be granted to the complainant. That he the complainant has called on the defendants, the executors of the said *Francis*, to account with him for the use, profits and enjoyment, of the said *William's* estate, whilst in possession of their testator, and whilst in their possession since his death, and to pay the same over, which reasonable request the defendants have refused to comply with. *Prayer* for an account, &c.

The answers of the defendants admit the said *Mary* obtained letters of administration on the estate of her deceased husband *John*, and that the said *William* was entitled to a distributive share, which the said *Mary* did actually pay to the said *William* on the 14th June 1763, as by his receipt produced in full for his share of his father's estate. They have heard that the said *William* obtained a negro man named *Tim*, as his proportion of his brother *Richard's* estate, but that the said negro has been dead 20 or 30 years past. They do not know or admit that he ever was in the possession of the said *Francis*. They do not know that negro *Grace* was, after she was given to the said *William*, sold by the said *Mary*, or that she received the money arising from the sale; but they admit, that on the death of the said *Mary* the

said *William* was entitled to a proportion of her estate. That the said *Mary* has been dead upwards of 18 or 20 years past, and that on her death the said *Francis* obtained letters of administration on her estate, and did, as the defendants believe, pay and satisfy the said *William* for his proportion of the said estate, as will appear by a receipt given by him on the 1st of January 1775, to the said *Francis* the administrator. They admit that the said negro *James*, (mentioned in the last receipt,) and *Hagar*, lived with and worked for the said *Francis* until his death, which happened in 1797; and they admit the said *William* also lived with and was supported by the said *Francis* until his death, which happened in 1795 or thereabouts. That since the death of the said *William* and *Francis*, the said negro *Hagar* has been permitted to go at large by the complainant. That the said two negroes are about 60 years of age, and of course rather an expense than profit. That they were not included by the defendants in the inventory returned by them of the estate of the said *Francis*, nor do they claim them as such. They admit that the said *William* was a man of weak mind, and incapable of managing for himself, and that he lived with and was under the care of his brother *Francis*; but they deny that the said *Francis* made a profit by his labour, or treated him as a negro, or worked him as such; but that he lived with the said *Francis* as one of the family, and amused himself in any mode he thought proper; that in the latter part of his life, and at his request, the said *Francis* had a house furnished for him that he might live by himself, and that a negro boy, belonging to the said *Francis*, was constantly employed to wait on him, and that he eat in the family of the said *Francis*. That the labour of the slaves of the said *William* was not equal to the expense of maintaining him. They admit that the said negro *Hagar* had a daughter named *Meriah*, and that she is now about 30 years of age. That the said *William*, at the time when he was capable of managing for himself, exchanged the said *Meriah*, when she was young, with the said *Francis*,

for a horse, and the said *Francis,* afterwards, (25 years ago,) held and claimed her. That *Meriah* has, on the distribution of the said *Francis's* estate, been given to *Polly* his daughter. They do not know that the said *William* was ever entitled to negro *Sall,* as stated in the bill, or that she ever belonged to the said *Richard Scrivener.* That she was always held as the property of the said *Francis.* From the length of time in which the different events stated in the answer took place, the defendants pray the aid of the act of limitations, and plead the same in bar to the complainant's bill, and of the relief prayed, &c.

The parties agreed that the auditor should state an account between them, and return the same to the court of chancery, there to be liable and subject to every exception, which could be made against a decree to account, by either party, within 30 days after the return. The auditor accordingly stated sundry accounts, and made report thereon to the court of chancery—and the complainant's counsel excepted to the auditor's report and accounts, "because the accounts No. 4, &c. against the weight of evidence, state balances in favour of the defendants, when according to the evidence the balances ought to be in favour of the complainant." And the defendants' counsel also excepted to the said report and accounts, "because the accounts No. 4, &c. against the weight of evidence, state a balance due to the complainant, when the balance, according to the evidence, should be in favour of the defendants." There had been much evidence taken under a commission, and also by the auditor. The case was argued before the chancellor on the exceptions of each party to the auditor's report.

Hanson, Chancellor, (21st of March 1803.) The auditor had stated an account without any order of the chancellor, but merely on the agreement of the parties, reserving the equity, &c. And the exceptions are only general, viz. that the auditor has stated against the evidence; such exceptions, the chancellor

conceives, ought never to be filed; every exception, in his opinion, ought to point out a particular error or errors, and general exceptions only transfer in effect the examination of the papers from the auditor to the chancellor. He has however examined the papers.

He wishes it impressed on the minds of the gentlemen of the bar, that this court neither decides on titles to property, nor determines important litigated points of law.

The complainant grounds his application chiefly on the point, that certain property of *Mary Scrivener* was not returned in the inventory by *John Scrivener*, and it seems that *John Scrivener* claimed it as his own property. Is the chancellor now on depositions to ascertain in which of them was the right of property? A great number of years have elapsed since the death of the said *Mary*; and no proper legal steps seems to have been taken on account of the supposed omission in the inventory. In short, the chancellor will not undertake to decide with respect to the right of the said property.

As to the exceptions, the chancellor can only say, it appears to him that none of the auditor's statements is right, except merely his calculations, which are seldom (if ever) wrong. The chancellor would state the account himself, if it were not, that on examination of the great mass of strange evidence he is far from being satisfied that the complainant as administrator of *William Scrivener* is entitled to claim any thing on an account to be stated fairly between *John* and *William Scrivener*, for clothing and maintenance, on one side, and for labour, the use of property, &c. on the other side.

From the manner in which the cause was argued, the chancellor considered, that he was hearing it finally; and he sees no reason for postponing a final decision. *Decreed*—that the bill of the complainant be dismissed; and that the defendants be hence dismissed, but without costs. There is no necessity for deciding with respect to limitation or the lapse of time.

From which decree the complainant appealed to this court.

*Key* and *Shaaff*, for the Appellant.

*Martin,* (Attorney-General,) *Pinkney* and *Johnson,* for the Appellees.

THE COURT OF APPEALS, [*Rumsey,* Ch. J. *Jones* and *Dennis,* J.] at this term, (June 1805,) *reversed* the decree of the court of chancery—And Decreed, that the appellant shall be allowed against the appellees for one fourth of the personal property of *Mary Scrivener* not included in the inventory returned by her administrator *Francis Scrivener,* the said one fourth part amounting, as stated by the auditor in his report made to the court of chancery, to the sum 86*l* 15*s* 0*d* current money; that the appellant shall also be allowed ten years hire of the following negroes, from the 4th of April 1772, to the 4th of April 1782, and at the following prices, to wit: *Tim* at £15 per annum; *Jem* at £15 per annum; and *Hagar* at 7*l* 10*s* 0*d* per annum; and also the following sums annually for the following negroes, from the said 4th of April 1772, to the 1st of January 1797, to wit: for *Jem* £15, and *Hagar* 7*l* 10*s* 0*d*, and the sum of 5*l* 10*s* 0*d* per annum for the negro *Meriah,* from the 1st January 1790 to the 1st January 1797. That the appellees be allowed against the appellant the sum of £15 per annum, from the 4th of April 1772 to the 1st January 1797, for the board and maintenance of *William Scrivener,* deceased; and the appellees shall also be allowed one third part of the balance due the appellant, after deducting as aforesaid for the board and maintenance of the said *W. Scrivener;* the said one third part being the proportion due the appellees as their share of the personal estate of the said *W. Scrivener*—and the balance remaining due to the appellant after the aforesaid deductions for the appellees shall, under the particular circumstances of this case, only bear interest from the 28th of March 1799, the time of filing the bill—And that the appellees shall pay the said appellant the said balance, with the interest aforesaid, together with one third part of the appellant's costs of

JUNE 1805

Scrivener
vs.
Scrivener

suit, both in the court of chancery and this court. And that the chancellor pass such order and decree in the premises as shall be proper and sufficient to carry into effect the judgment and decree of this court therein.