GRACE SUZANNE HOLLOWAY et al. *v.* SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee.

*Reversal on Appeal—Effect on Auditor's Accounting—Exceptions to Account—Indefiniteness—Amendment—In Discretion of Court—Trustee—Liability for Costs.*

An appeal does not suspend the operation of a decree, or stay its execution, unless accompanied by a bond of indemnity to secure the other parties from all loss or injury sustained by the prosecution of the appeal, and the staying of the execution or operation of the decree.                    pp. 295, 296

That an appeal is taken under Code, art. 5, sec. 31, from a decree which determines a question of right between the parties and directs an account to be stated on the principle of such determination, does not render premature the statement of an account in obedience to the decree, though the audit will prevail or fall accordingly as the decree may be affirmed or reversed on appeal.                    pp. 295-297

In such a case, whatever there may be in the account which has not been adjudged by the decree is a separate matter for independent consideration and decision.                          p. 297

On appeal from an order ratifying an account stated in accordance with a decree of the chancellor, which has since been reversed by the Court of Appeals, the order of ratification will be reversed in order to bring the proceedings into conformity with the determination of the appellate court.                          p. 297

Under Code, art. 5, sec. 40, no objection can be made on appeal to the statement of an account, unless such objection was made by exceptions filed in the court below, pointing out the particular allowance objected to or the particular claim allowed or not allowed, except where the audit was stated to represent the respective contentions of the opposite parties, or where the rights of the parties had been adjudicated, and the auditor merely presented a statement of these rights as adjudicated.

pp. 298, 299

That a refusal to allow an amendment of the grounds assigned for exceptions to the statement of an account, by making them more specific, may be shown to have injured appellant, the proposed amendment must appear from the record to have been sufficient to correct the errors of the original exceptions.   p. 300

A request for leave to amend the grounds assigned for exceptions to an auditor's account should be by a petition setting out the proposed amendments.                          p. 300

The matter of allowing amendments is in the sound discretion of the court, and the general rule in equity is that the exercise of such discretion is not the subject of appeal.          p. 300

Allowances of counsel fees and of auditor's fees involve questions of fact as well as of law, and hence are not reviewable in the absence of an exact and definite statement of exceptions.

p. 301

The allotment of securities by a trustee, in order to create a special fund, as provided by the will creating the trust, being open to exception only in case of grave misconduct by the trustee in making the allotment, an auditor's statement of such allotment involves matter of fact as well as of law, and is not reviewable in the absence of specific exceptions.          p. 301

A trustee, by securing a statement and report of audits before the lapse of the time allowed for an appeal from the decree on which they are based, assumes the risk of reversal of the decree, and so may be liable for the costs of the accounting.        p. 302

*Decided January 12th, 1927.*

Appeals from the Circuit Court No. 2 of Baltimore City (DUKE BOND, J.).

Petitions by the Safe Deposit and Trust Company, as trustee under the wills of John Q. A. Holloway, deceased, and of Susanna Holloway, deceased, against Grace Suzanne Holloway, and Marie Calou, executrix of the estate of John E. Holloway, deceased. From decrees overruling exceptions to auditor's accounts in connection with each trust, and ratifying and confirming the accounts as stated, said respondents appeal. Decree in each case affirmed in part and reversed in part.

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Isaac Lobe Straus,* with whom were *Leslie E. Burks* and *J. Paul Schmidt* on the brief, for the appellants.

*John B. Deming,* for the appellee.

PARKE, J., delivered the opinion of the Court.

John Q. A. Holloway died testate on January 14th, 1904, and devised and bequeathed one-sixth of his residuary estate to the Safe Deposit and Trust Company of Baltimore, in trust to pay the net income arising to his son, John E. Holloway, for life and, at his son's death, to divide the corpus of trust among the son's children and descendants as the son should appoint by will, but, if he should fail to exercise the power of appointment, then to divide the trust estate in equal portions among the said son's children then living and the

issue then living of any dead child of said son, *per stirpes;* and should the said son die without leaving any issue, then the one-third of the estate was given absolutely to testator's son, Edward Lee Holloway, and the remaining two-thirds was to remain in trust for the equal benefit of testator's daughter, Anna Elizabeth Holloway, and his son, Clarence J. Holloway, subject, however, to the provision that if the said John E. Holloway should leave a widow, who was born in testator's lifetime, the trustee should retain at the son's death, "for division at her death or remarriage, whichever should first occur, one hundred thousand dollars of the trust fund and property," and shall pay, during her life or widowhood, the income thereof to said widow.

Susanna Holloway, widow of John Q. A. Holloway, and mother of John E. Holloway, survived her husband until December 5th, 1911, and left at her death a will which disposed of the one-fourth of her residuary estate by giving it to the same trustee for the benefit of her son, John E. Holloway, during his life, and then over as provided in her husband's will, except no provision was made for a surviving widow, and except that, upon the death of John E. Holloway without issue him surviving, the trustee was to transfer one-sixth part of the trust estate to Edward L. Holloway absolutely, and another one-sixth part should continue to be held in trust for the benefit of Anna Elizabeth Holloway, the daughter of testatrix, during life, and then over to the daughter's descendants as she might by will appoint, and, in the event of a failure of such appointment, then in equal portions among the children of said daughter and, if any of such children be dead, to their issue *per stirpes,* and, if there be a complete failure of issue, then one-third of said one-sixth to Edward L. Holloway absolutely, and the remaining two-thirds of said one-sixth to remain in the hands of said trustee upon the trusts declared, but which it is unnecessary to set forth. Another one-sixth part remained upon a trust for the use of Clarence J. Holloway, like that created for the benefit of Anna Elizabeth Holloway; and the remaining

three-sixths part of said trust was to be divided among a number of charitable organizations.

The Safe Deposit and Trust Company assumed the administration of the trusts and was engaged in discharging its fiduciary duties on January 29th, 1925, when John E. Holloway, the beneficiary for life under the trusts created by the two wills, died. He was survived by his widow, Anne McClellan Holloway, who was born during the life of his father, but by no descendants born in lawful wedlock. His brother, Clarence J. Holloway, and his sister, Anna Elizabeth Holloway, now intermarried with Charles Nones, survive him, but his brother, Edward Lee Holloway, had previously died and had devised and bequeathed all his estate to this sister.

Several weeks after the death of John E. Holloway, the trustee was advised by an attorney of Berkley, California, where the death occurred, that the only descendant of John E. Holloway was a young girl called Grace Suzanne Holloway, who had been born to Marie Calou and John E. Holloway on September 23rd, 1912, while the two were living together; and that John E. Holloway had left a will, dated March 24th, 1913, whereby, in the attempted exercise of his powers of appointment, he had given everything subject to his power of disposal under his parents' wills absolutely to Grace Suzanne Holloway; and had appointed Marie Calou his executrix.

This communication was the result of a request made by the father a few days before his death, when he had employed the attorney to represent the interests of his infant daughter: and it assumed that the trustee would want record evidence of the probate of the will and "of the existence of said Grace Suzanne Holloway as the party entitled to take under the will of said John Q. A. Holloway, deceased," and concluded with the statement that it would "take some months to complete the probate of this will so that such records will be available."

This information caused the trustee to seek legal advice of John B. Deming, Esq., which resulted in a petition being filed in chancery in the cause wherein the trust created by the

will of John Q. A. Holloway was being administered, and an original proceedings being begun to have equity assume jurisdiction of the trust declared by the will of Susanna Holloway. Both of these proceedings were begun on March 2nd, 1925, and Clarence J. Holloway, Anna E. Holloway Nones, individually and as executrix of Edward Lee Holloway, Grace Suzanne Holloway, infant, and Marie Calou, purporting executrix of the will of John E. Holloway, were made parties defendant in both, while Anne McClellan Holloway was the additional defendant in the petition, and the various religious corporations named in the will of Susanna Holloway were the other defendants to the bill of complaint. The two proceedings set forth, among other things, the terms of the respective trusts and the property embraced in each, the parties entitled, and claiming to be entitled, as the beneficiaries of each trust, the undistributed income, and concluded with a prayer that an accounting might be had, the language of the will construed, the respective rights of the parties entitled adjudicated, and general relief accorded.

The parties defendant answered, and it appeared that the principal point of contention would be whether or not Grace Suzanne Holloway was a child of John E. Holloway within the meaning of the wills of his father and mother by reason of the daughter having acquired the status of a legitimate child pursuant to the provisions of the statutory law of Nevada, where the father and her mother lived at, and some time after, her birth. At the close of the proceedings on this issue, the chancellor, on December 8th, 1925, adjudged in both cases that John E. Holloway had died without lawful issue, and directed a distribution to be made, and in what manner, to the distributees specifically determined by each of said decrees.

In the two decrees, there was a reference of the several proceedings to the auditor for the statement of such accounts as might be necessary, "whereby after due allowance to the trustee of its commissions and the proper charges and expenses of its administration, including a reasonable counsel fee payable out of the corpus of the trust estate, the net

corpus and accrued income thereof shall be ascertained and distributed as herein decreed." Grace Suzanne Holloway and her guardian, and the executrix of John E. Holloway, took an appeal on January 22nd, 1926, from the decree in each cause, but, pursuant to the decrees, the auditor had previously stated and filed on January 13th separate accounts of income and principal in each cause. These accounts were not attacked until January 22nd, 1926, the day of the appeals, when the parties appealing filed similar exceptions in both causes. The record shows that the chancellor passed an order granting leave to take testimony on the exceptions, and the exceptions came on for hearing in open court, but were submitted, without testimony, on February 19th, 1926. On February 24th, the chancellor passed an order in each case overruling the exceptions and ratifying and confirming the accounts as stated. On the following April 21st an appeal was taken. The record was not certified by the clerk of the equity court where the causes were pending until July 19th, and on the same day the record was transmitted to and filed in this court, which was eleven days after the reversal of the two decrees of the chancellor. (See 151 Md. 321.)

The first ground of exception to the reports and accounts in both causes is that the appeals from the decrees of December 8th are "undisposed of and pending," and the fourth ground is that these reports and accounts "are premature and unauthorized." These two grounds are substantially the same, and present no tenable basis for exception. The appeals from the decrees of December 8th were permitted, since they were orders "determining a question of right between the parties, and directing an account to be stated on the principle of such determination." Code, art. 5, sec. 31. But the appeals did not suspend the operation or stay the execution of the decrees, since the appeals were not accompanied by appellants' bonds of indemnity to secure the other parties from all loss or injury sustained by the prosecution of the appeals and the staying of the execution or operation of the decrees. Code, art. 5, sec. 33; *Shirk v. Soper,* 144 Md. 269, 283. It follows as a necessary consequence that the state-

ment of the accounts was authorized because it was in obedience to the express direction and reference of the decrees, whose operation or execution the appellants had not elected to stay by the giving of the requisite bonds. *Konig v. Baltimore,* 128 Md. 465, 475. Even if an appeal bond of indemnity had been given, it would have stayed the operation or execution of the decrees only with reference to the rights which they had adjudicated. *Barnum v. Barnum,* 42 Md. 251, 294; *De Bearn v. Winans,* 115 Md. 139, 153. With respect to those rights which had been decided, the decrees, until reversed, were the law governing the causes; and audits stated in conformity with the decrees would prevail or fall as the decrees would be affirmed or reversed on appeal. *Webb v. Haeffer,* 53 Md. 187, 192; *Chilton v. Brooks,* 69 Md. 584, 585, 588; *Miller's Equity,* sec. 372, p. 449.

In the two former appeals of Grace Suzanne Holloway, infant, and Marie Calou, her guardian, and of Marie Calou, executrix of John E. Holloway, against the trustee (151 Md. 321), in which the opinion was filed on July 8th, 1926, the decrees in question were each affirmed in part and reversed in part, and the causes were remanded for decrees in accordance with the decision. The reference of the proceedings in each cause to the auditor for the statement of accounts; the determination of the shares of those entitled to the undistributed net income of the trust at the time of the death of John E. Holloway; and the adjudication that Anne McClellan Holloway, who was born in the lifetime of John Q. A. Holloway, was the lawful widow of John E. Holloway and was entitled, after his death and during her life and until her remarriage, to the net income arising from the fund of one hundred thousand dollars to be held and set apart by the trustee from the general trust estate formerly held for the use of John E. Holloway under the provisions of his father's will, were all affirmed, but on the principal question the decrees were each reversed for the common error in holding that Grace Suzanne Holloway was not entitled to take, under her father's will, the trust property over which he had enjoyed a power of appointment under the wills of his parents.   To

the extent that the accounts of the auditor corresponded with what had been rightly determined by the decrees, the accounts must be affirmed; and in whatever respect the accounts are at variance with the decision of this Court on the appeals, the accounts must be held in error. And, again, whatever there was in the accounts which had not been adjudged by the decrees was a separate matter for independent consideration and decision. *Supra. Smith v. Lord*, 111 Md. 503.

The income account in both trust estates distributed the fund accruing due from that particular source as of the date of the death of John E. Holloway, in accordance with the relative rights of his widow and of his estate, and the residue in each trust was retained in the hands of the trustee for future distribution. These accounts, therefore, are not at variance with the decision of this Court; and there is no ground for a reversal of the lower court's order ratifying these two reports and accounts of income.

The two accounts of the principal of each trust reflect the errors of the chancellor's decrees. In the account of the principal in the trust estate under the will of John Q. A. Holloway, the allotment of securities to make the trust fund of one hundred thousand dollars to be retained for the use for life or until remarriage of Anne McClellan Holloway, and the residue of the trust fund, are alike distributed to the trustee to be held and distributed according to the terms of the chancellor's decree of December 8th, 1925. In like manner, the account of the principal in the trust estate under the will of Susanna Holloway is retained for later distribution according to the views of the chancellor's decree of December 8th, 1925. As has been stated, so to hold and to distribute the principal trust estate would deprive the daughter of John E. Holloway of all interest in the two trust estates, and be in direct and obvious antagonism with the mandate of this Court in the former appeals. For these reasons, and not because the audits were premature or unauthorized, the final orders of ratification of the two accounts of the principal of the trust estates must be reversed, in order to bring the proceedings into conformity with the determination of this

Court. *Smith v. Lord,* 111 Md. 503; *Reiff v. Horst,* 55 Md. 42, 50.

The decrees of the chancellor were adjudications of the rights and title of the several parties in the two trust estates, but were not an allotment in kind of a sufficient portion of the trust estate created by the will of John Q. A. Holloway to provide a trust fund of one hundred thousand dollars for the use of Anne McClellan Holloway during her life or until she remarried; nor a determination of what was a reasonable fee to the solicitor for the trustee; nor did it anticipate and approve the fees to be allowed the auditor for his future services.

This allotment, the amount of counsel fee to be allowed, and the proper compensation of the auditor, were all matters which were untouched by the decrees, and were new matter in the accounts. The appellants were interested in all these fresh questions, and could have challenged the accounts in these particulars, and have obtained a decision for review in this court, provided these questions were properly raised.

They were not matters which were involved in the former appeals and, therefore, the first and fourth grounds of exceptions, which have been stated, were not applicable. There was not a single exception directed to any particular matter or allowance, but the exception in each cause is to the entire account, and the second, third and fifth grounds of exceptions are that the "auditor's reports and accounts are not in accordance with law and are in violation of the rights of these exceptants"; or "are improper and erroneous"; or "that the allowances in said reports and accounts are improper and unauthorized"; and each exception concluded with the sixth ground of "for other reasons to be shown at the hearing." The cause was heard in open court, and was submitted without testimony, although leave had been granted to take testimony. The record indicates nothing beyond the fact, appearing in a recital found in the chancellor's order dismissing the exceptions, that "the solicitors for the respective parties were fully heard in argument and the proceedings were read and considered." Nowhere in the record does it appear

what were the questions before the lower court. The statute
with reference to appeals from a court of equity expressly
prohibits any objection to an account stated and reported in
said cause, unless it shall appear by the record that such ob-
jection was made by exceptions, which had been filed in the
cause. Code, art. 5, sec. 40. Under this statute the appel-
late court is prohibited from passing upon an objection to an
account unless properly made in the equity court. As pointed
out in *Miller's Equity,* there are two classes of exception to
this general rule. The first is where audits are stated to rep-
resent the respective contentions of the opposite parties; and
the second is where the rights of the parties have been adjudi-
cated by the court, and the auditor merely presents a state-
ment of these rights as adjudicated. Aside from the state-
ment in the audits of the title in the trust funds being held
by the trustee in trust for the parties in interest as adjudged
by the decrees of the chancellor, the matters with which the
audits of the principal of both trust estates dealt had not been
determined by the decrees of the chancellor, and, so, the gen-
eral rule exacting proper exceptions applied. *Miller's Equity,*
secs. 335, 336, 546.

The statute was enacted to correct the evil of having points
raised on appeal which had not been made before the chan-
cellor, and it therefore required the record to present the
same questions in the appellate court as had been decided by
the equity court. It was the intention of the Legislature that
an exact and definite statement of exceptions be required in
the lower court in order to enable the opposite party to offer
necessary evidence and to make his defense, and so as to pre-
vent either party from being taken by surprise on appeal.
A proper exception, therefore, to an account stated and re-
ported must, except in the two instances without the general
rule, point out the particular allowance objected to or the
particular claim allowed or not allowed. The enforcement
of this rule is exemplified by many instances in the reports,
and it requires no argument nor quotation from decisions to
establish the patent fact that the exceptions here are too gen-

eral to permit consideration on this appeal. *Miller's Equity,* secs. 335, 337, 338, 545, and cases cited. *Young v. Omohundro,* 69 Md. 424, 432; *Scrivener v. Scrivener,* 1 H. & J. 743; *Stokes v. Detrick,* 75 Md. 256, 267; *Norwood v. Norwood,* 2 Bl. 471, 481; *Burroughs v. Bunnell,* 70 Md. 18, 28; *Calvert v. Carter,* 18 Md. 73, 90, 111; *Grove v. Todd,* 45 Md. 252, 256; *Thomas v. Visitors etc.,* 9 G. & J. 115, 121; *Darby v. Rouse,* 75 Md. 26, 29; *Title Guar. & Tr. Co. v. Burdette,* 104 Md. 666, 675; *O'Sullivan v. Traders' Assn.,* 107 Md. 55, 61; *General Ins. Co. v. United States Ins. Co.,* 10 Md. 517, 529.

The record carries a notation that, at the end of the argument on the exceptions to the audits, the solicitors for the exceptants asked leave to amend the grounds assigned for the exceptions by making them more specific, but that the chancellor had refused to grant the request. Before any injury can be said to have been done by this refusal, the proposed amendment must appear to have been sufficient to correct the errors of the original exceptions. The request for leave to amend should have been by a petition, setting out the proposed amendments. *Miller's Equity,* sec. 190, 183; *Wagoner v. Wagoner,* 77 Md. 189, 193. This was not done, nor is there anything on the record to supply this omission or to indicate what would have been the amended "grounds assigned for the exceptions" and that they would have corrected the vice of the original exceptions. Conjecture cannot supply what should appear as a part of the record. While the statute and the rule of this Court permit amendments to be freely made, the matter is in the sound discretion of the court, and the general rule in equity is that the exercise of such discretion is not the subject of appeal. *Kernan v. Carter,* 132 Md. 577, 594; *Thompson v. Thomas & Thompson,* 132 Md. 483, 488, 490; *Diedel v. Diedel,* 133 Md. 286, 288; *Miller's Equity,* secs. 182-190. This record furnishes no basis whatever for the conclusion that the chancellor was not wholly justified in declining the request to amend, and, in the absence of anything appearing to the contrary, it will be

assumed that his refusal was in the use of a sound discretion.

It is argued, however, that the allotment of the securities, and the allowance of counsel and auditor fees, are reviewable without exceptions because they were all errors of law. This argument ignores the statutory law and the decisions of this Court, and is predicated upon a false premise. Taking the things assailed in their reverse order, the auditor was entitled as a matter of law to a fee, but the amount depended upon the number of days he labored, which was a fact, or, if certain hours of work could be counted a day for every multiple thereof, a mixed question of law and fact. Again, the solicitor for the trustee was admittedly entitled as a matter of law to a fee, but the amount of that fee was a question of fact or a mixed question of law and fact, according to the basis upon which the scope of his services to the trusts would be measured. Finally, the trustee had the legal right to retain for division at the death or remarriage of Anna McClellan Holloway one hundred thousand dollars of the trust fund and property, and the trustee had the privilege "to make any division in kind of the trust estate or any part thereof which may be requisite to carry into effect the provisions" thereof; therefore, an allotment in kind by the trustee was its right as a matter of law, and an exception to the allotment in kind as made and reported could only be sustained because, in the exercise of this legal right of retention and selection in kind, the trustee had been guilty of some grave misconduct, which would, also, raise a question of fact and not one of law. *Perry on Trusts,* sec. 511, *et seq.* Consequently, the points now raised do not present pure questions of law, but relate to facts on which the exceptants offered no proof. The purpose and advantages of the general rule, that an exception must point out the particular item or matter objected to, are so evident that there should be no relaxation of its enforcement. *Supra,* and 2 *Daniel's Chancery Practice* (6th Am. Ed.), 1302, and notes, 1315, notes 1 and 3, star paging.

For the reasons we have stated, the allowance of fees to the solicitor for the trustee and to the auditor, and the selection

of the securities by the trustee for the fund of one hundred thousand dollars, are not properly before us on this appeal, and so cannot be considered. As the orders ratifying the accounts and reports of the principal of each trust will be reversed, it will be necessary for new audits to be stated, and as these will again embrace the items in controversy, there will be an opportunity for the parties to present and have fully heard and determined any proper objections.

Although the decrees had referred the causes to the auditor for the statement and report of accounts in conformity with the determination of the decrees, there was no necessity for the statement of these audits until the expiration of the period allowed by law for an appeal. No matter what the import of the decisions of the chancellor, the final law of the causes would be the adjudications of the appellate court. As was said in *Smith v. Lord,* 111 Md. 500, at page 503: "In *Waters v. Waters,* 28 Md. 22, this Court thus stated the principle: 'No principle', they said, 'is better established than that a decision of the Court of Appeals, once pronounced in any case, is binding upon the court below and upon this Court in the subsequent proceedings in the same case, and cannot be disregarded or called in question. It is the law of the case binding and conclusive upon the parties, and not open to question or examination afterwards in the same case.'" It follows that, in procuring the statement and report of the audits before the time allowed by law for an appeal from the decrees had passed, the trustee assumed the risk of the accounts and reports becoming premature through a reversal of the decrees, and this risk embraced the costs of the accounts. It is to be noted that the accounts of the corpus of the trusts were not complete, as there was no distribution made of the trust estates as contemplated by the decrees. This made necessary further audits, even if the decrees had been affirmed on appeal. Under such circumstances, the costs of this appeal and the costs, including auditor's fees, of the accounts of the principal of the estate in each trust, are not chargeable against the trust funds but are payable by the trustee

personally and not in its representative capacity.   *Perry on Trusts,* secs. 899, 901, 903.

> *Decree of chancellor in ratifying audit of income in No. 59 affirmed, and decree ratifying audit of principal in No. 59 reversed and cause remanded, that a decree may be passed in accordance with this opinion, and with a reference of the proceedings to the auditor, with costs to be paid by the Safe Deposit and Trust Company of Baltimore.*
>
> *Decree of chancellor in ratifying audit of income in No. 60 affirmed, and decree ratifying audit of principal in No. 60 reversed, and cause remanded, that a decree may be passed in accordance with this opinion and with a reference of the proceedings to the auditor, with costs to be paid by the Safe Deposit and Trust Company of Baltimore.*